**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

GOVINDA ROMERO,

       Plaintiff,

v.                                CASE NO.: 1:08 CV 217-SPM-AK

CLOVIS WATSON JR, City Manager
of the Municipality of Alachua, Florida
in his individual capacity, and

GENE PATTON, Building Official
of the Municipality of Alachua, Florida
in his individual capacity, and

The MUNICIPALITY OF ALACHUA FLORIDA,

       Defendants.

_____/

**<u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u>**

      This cause comes before the Court for consideration of Defendants'

motion to dismiss Counts I, III, IV, and V (doc. 6), Defendants' supporting

documents (doc. 7), and Plaintiff Romero's response in opposition (doc. 11).

      For the following reasons, Defendants' motion to dismiss will be granted

as to Count I (Procedural Due Process), Count III (Substantive Due Process),

and Count V (Temporary Taking of Property without Just Compensation), without

prejudice and with leave to amend.  Defendants' motion to dismiss with prejudice

will be granted as to Count IV (Substantive Due Process - Fundamental Liberty Interest).  Count II (Equal Protection) was not challenged in Defendants' motion.

<u>Facts Alleged</u>

Plaintiff Govinda Romero ("Romero") sought to erect a mobile home on his property in the city of Alachua, Florida.  Romero applied for the required building permit, and the city issued the permit on February 1, 2007.  (Pl.'s First Am. Compl. ¶ 20, Ex. B.)  The next day, Romero purchased a mobile home for $49,000 and hired a company for its set up and delivery.  (Compl. ¶ 21.)  On February 16, 2007, Building Official Patton, at the request of City Manager Watson or alternatively on his own, issued a stop work order on Romero's property which required Romero to immediately cease and desist all work on the property.  (Compl. ¶¶ 25-26, 30, Ex. C.)  The stop work order contained no reference to any violation of a building regulation or other law (Compl. ¶ 28), and remained in effect until its dissolution on July 13, 2007 (Compl. ¶ 31).

Ten days after the issuance of the stop work order, on February 26, 2007, the City of Alachua City Commission held a public meeting and comment. (Compl. ¶¶ 32, 34.)  Citizens complained about mobile homes and their devaluation of surrounding properties, including a complaint that someone was "trying to move in a $30,000, used trailer in a neighborhood of $200,000 homes and that will devalue the whole area."  (Compl. ¶¶ 33-36.)  After public

comments, the City Commission passed Emergency Ordinance 7-11, a

temporary moratorium on the "acceptance of applications for and issuance of

land use, building, and development permits for manufactured home dwelling

units" for sixty-one days.  (Compl. ¶¶ 32, 37; Def.'s Docs. 1.)  Then, at a meeting

on May 21, 2007, the Commission passed Ordinance 7-23 to extend the

temporary moratorium for an additional ninety-one days until July 28, 2007.

(Compl. ¶ 60; Def.'s Docs. 2.)  The extension included exemptions for two

property owners who were faced with hardship, but did not exempt Romero.

(Compl. ¶¶ 60-61.)  In any event, Romero contends that the moratorium was "not

applicable to plaintiff's previously issued permit on February 1, 2007."  (Compl. ¶

37; Pl.'s Resp.: 18.)

Romero brought suit under 42 U.S.C. § 1983 against the city of Alachua,

Building Official Patton, and City Manager Watson (collectively, the Defendants).

Romero alleges five violations of his constitutional rights: (1) Procedural Due

Process; (2) Equal Protection; (3) Substantive Due Process; (4) Substantive Due

Process - Fundamental Liberty Interest; and (5) Temporary Taking without Just

Compensation.  (Compl.)  Defendants have moved to dismiss all counts except

the Equal Protection claim found in Count II.  (Def.'s Mot. to Dismiss.)

<u>Standard on a Motion to Dismiss</u>

To state a claim for relief, the plaintiff must give "'the defendant fair notice

of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41,

47 (1957)).  The court may grant a motion to dismiss under Rule 12(b)(6) if the

plaintiff's factual allegations create merely a suspicion of a legally cognizable

right of action.  *See Twombly*, 127 S. Ct. at 1964-65.  The court should not

evaluate the veracity or weight of potential evidence on a motion to dismiss.  *See*

*Clark v. Potter*, No. 5:07cv41/RS/EMT, 2008 WL 186619, at *1 (N.D. Fla. Jan.

18, 2008) (internal citations omitted).  Instead, the alleged facts must be

accepted as true and must be construed in the light most favorable to the

plaintiff.  *See Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (internal

citations omitted).

I.  INTRODUCTION

"Land-use litigation is a complex area of law, to say the least."  *Watson*

*Constr. Co. v. City of Gainesville*, 433 F. Supp. 2d 1269, 1274 (N.D. Fla. 2006).

Both litigants and courts can be confused by the complexity, and "often one

cannot tell which claim has been brought or which standard is being applied."

*Eide v. Sarasota County*, 908 F.2d 716, 722 (11th Cir. 1990).  The United States

Supreme Court has refined its understanding of these concepts over the years,

sometimes overturning or modifying previous decisions or portions of them.  *See*

*Watson*, 433 F. Supp. 2d at 1274 (describing refinements in land-use litigation).

The Eleventh Circuit has recognized the ensuing confusion and has attempted to

clarify this area of the law on several occasions.  *See Greenbriar Village, LLC v.*

*Mountain Brook*, 345 F.3d 1258 (11th Cir. 2003); *Villas of Lake Jackson, Ltd. v.*

*Leon County*, 121 F.3d 610 (11th Cir. 1997); *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994); *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990).  The resulting legal framework is difficult to interpret and this case illustrates that "confusion abounds."  *Watson*, 433 F. Supp. 2d at 1274.  In some cases, the abounding legal confusion has led to the dreaded "shotgun" pleading, in which plaintiffs add to the problem by alleging a myriad of facts under an undecipherable legal theory.  *See Boatman v. Town of Oakland, Fla.*, 76 F.3d 341, 344 n.6 (11th Cir. 1996) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).  In an attempt to cut through the confusion, the court must examine each cause of action "for what it actually is, not for what [the plaintiff] would have it be" when determining the type of claim.  *McKinney*, 20 F.3d at 1560.

While this task can be difficult, the goal is simple: to limit the role of the federal court in land-use litigation.  "Federal courts do not sit as zoning boards of appeals."  *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1558 (11th Cir. 1991) (citing *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989)).  In addition, "[f]ederal courts must not usurp the roles of agencies, review boards, and state courts in reviewing the wisdom of executive actions."  *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 960 (11th Cir. 1997).  There is an important reason for this policy: a state should have the first chance to correct the mistakes it makes when reasonably regulating the land within its borders. *See Eide*, 908 F.2d at 726 ("zoning is a delicate area where a county's power

should not be usurped without giving the county an opportunity to consider concrete facts and the merits prior to a court suit.").

II.  DECIPHERING THE CLAIM

There are several important distinctions that determine the claim a plaintiff may bring in land-use cases.  These distinctions include whether the interest concerned is based in state law and whether the state action at issue is executive or legislative.  However, "[n]ot every wronged party has a valid claim for a constitutional violation whenever a local building official makes an incorrect decision regarding a building permit."  *Spence v. Zimmerman*, 873 F.2d at 260 n.5.

A.  Property Interest: State-Created or Fundamental

The first important distinction is whether the property interest concerned is created by state law.  Property rights created by state law, such as a potential right in a building permit, are entitled only to procedural due process protection. *McKinney*, 20 F.3d at 1556; *see also Busse v. Lee County Fla.*, No. 08-13170, 2009 WL 549782, at *4 (11th Cir. March 5, 2009).  State-created rights may be infringed by the state as long as certain procedures are followed.  *McKinney*, 20 F.3d at 1556.  Procedural due process protects not against "the *deprivation* of rights; it only protects against an unfair *process*."  *Watson*, 433 F. Supp. 2d at 1277 (emphasis in original).  A procedural due process violation is not complete "'unless and until the state fails to provide due process.'"  *McKinney*, 20 F.3d at 1557 (quoting *Zinermon v. Burch*, 494 U.S. 113, 123 (1990)); *see also Reams v.*

*Irvin*, No. 08-12023, 2009 WL 579222, at *6 (11th Cir. Mar. 9, 2009).  In many

cases, if the state provides an adequate post-deprivation procedure, then the

state has fulfilled its obligation to provide procedural due process when depriving

the plaintiff of a state-created right.  *See McKinney*, 20 F.3d at 1557.  In such a

case, the court's only consideration is whether adequate remedies were available

under state law, not whether the plaintiff took advantage of them.  *See Horton v.*

*Bd. of County Comm'rs, Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000);

*McKinney*, 20 F.3d at 1565 (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S.

461, 485 (1982) ("The fact that [the plaintiff] failed to avail himself of the full

procedures provided by state law [such as post-deprivation remedies] does not

constitute a sign of their inadequacy.")).

Each state's law will dictate the parameters of the state-created property

right and a plaintiff's interest therein.  *See Coral Springs St. Sys., Inc. v. City of*

*Sunrise*, 371 F.3d 1320, 1333-34 (11th Cir. 2004).  In Florida, the "question of

whether a prospective builder has a protected property interest in a building

permit . . . has been the subject of much confusion in the courts."  *Sullivan*

*Props., Inc. v. City of Winter Springs*, 899 F. Supp. 587, 593 (M.D. Fla. 1995)

(citing *Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374, 1379 (11th

Cir.1994)); *see also Decarion v. Monroe County*, 853 F. Supp. 1415, 1418 (S.D.

Fla. 1994); *Villas of Lake Jackson, Ltd. v. Leon County*, 796 F. Supp. 1477, 1484

(N.D. Fla.1992).  Under Florida law, vested rights can be created: (1) through a

party's reasonable and detrimental reliance on existing law; or (2) when a

municipality has acted in a clear display of bad faith, absent any reliance. *Coral Springs St. Sys.*, 371 F.3d at 1334.

The state of Florida not only dictates the parameters of the property interest, but also provides remedies for improper zoning decisions. Executive or quasi-judicial decisions of a zoning board are subject to review by certiorari. *See Bd. of County Comm'rs of Brevard County v. Snyder*, 627 So.2d 469, 474 (Fla. 1993) (holding that the zoning board is not required to make findings of fact, but that upon certiorari review the zoning board must demonstrate its ruling was based on competent substantial evidence). Legislative zoning decisions are also subject to attack in circuit court. *See id.* Florida circuit courts possess broad powers of review to determine whether due process is observed. *See McKinney*, 20 F.3d at 1563-64. Certiorari to the state court is usually an adequate state remedy. *See Reams*, 2009 WL 579222, at *7.

On the other hand, if the interest concerned arises under the federal constitution rather than as a creation of state law, the interest is protected by substantive due process. Substantive due process protects "those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney*, 20 F.3d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Fundamental rights include most of those enumerated in the Bill of Rights and certain unenumerated rights, such as the right to privacy. *See McKinney*, 20 F.3d at 1556; *Planned Parenthood v. Casey*, 505 U.S. 833, 851-53 (1992). These rights are protected "against certain government action regardless

of the fairness of the procedures used." *McKinney*, 20 F.3d at 1556 (internal

quotations omitted).  Unlike state-created interests, no amount of subsequent

process, such as a post-deprivation hearing, will cure a violation of substantive

due process.  *Id.* at 1557.   Instead, this violation is complete when it occurs.  *Id.*

While "property rights have been important common law rights throughout

history" and "are protected in many situations by procedural due process . . .

common law rights are not equivalent to fundamental rights, which are created

only by the Constitution itself."  *DeKalb Stone, Inc. v. County of DeKalb, Ga*., 106

F.3d 956, 959 n.6 (11th Cir. 1997); *see also Collins & Co. v. City of Jacksonville*,

38 F. Supp. 2d 1338, 1342 (M.D. Fla. 1998) (granting the defendant's motion to

dismiss because the right to "own, alienate, or otherwise use real property" does

not fall within the set of fundamental rights protected by substantive due process

under current Supreme Court jurisprudence); *Reserve, Ltd. v. Town of Longboat*

*Key*, 933 F. Supp. 1040, 1043-44 (M.D. Fla. 1996) (holding that the plaintiff's

interest in a revoked building permit "falls comfortably short of a fundamental

right").

In sum, a state-created property right is protected by procedural due

process.  Fundamental rights are protected by substantive due process, but the

right to use real property for a specific purpose is not a fundamental right.

B.  State Action: Executive or Legislative

The second important distinction to determine the claim that is available

available to the plaintiff is whether the complained-of conduct is an executive[1] or legislative act.  To characterize the act, some federal circuits examine the function performed by the decision maker, such as a legislative body performing legislation, while other circuits characterize legislative acts as those that are generally applicable and prospective.  *See 75 Acres, LLC v. Miami-Dade County, Fla.*, 338 F.3d 1288, 1296 (11th Cir. 2003); *see also Sullivan Props.*, 899 F. Supp. at 596.

For instance, "[e]xecutive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch." *McKinney*, 20 F.3d at 1557 n.9.  "'Acts of zoning enforcement rather than rulemaking are not legislative.'"  *DeKalb Stone*, 106 F.3d at 959 (quoting *Crymes v. DeKalb County*, 923 F.2d 1482, 1485 (11th Cir. 1991) (internal citations omitted)); *see also Reserve*, 933 F. Supp. at 1043-44 (holding that even if the decision to revoke a building permit was made by the legislative branch, the decision itself is executive because it applies to one person and not the general population).

If the complained-of state action concerning a right to real property is executive in nature, rather than legislative, the plaintiff can not maintain a substantive due process claim.  *See Villas of Lake Jackson*, 121 F.3d at 614-15

---

[1]  Executive and adjudicative acts are grouped together for this purpose as "non-legislative" acts.  For simplicity, this Order will refer to both types of non-legislative acts as executive acts.

(implying that executive acts will not sustain an arbitrary and capricious

substantive due process claim);  *DeKalb Stone*, 106 F.3d at 959-60 (holding no

substantive due process cause of action exists when an executive actor deprives

the plaintiff of a state-created property right);  *McKinney*, 20 F.3d at 1557 n.9

(implying that only legislative acts will support a substantive due process claim)*;

Reserve*, 933 F. Supp. at 1043 ("Section 1983 substantive due process claims

arising from non-legislative deprivations of state-created property interests are no

longer cognizable."); *Sullivan Props.*, 899 F. Supp. at 596.

On the other hand, "[l]egislative acts, [unlike executive acts], generally

apply to a larger segment of-if not all of-society; laws and broad-ranging

executive regulations are the most common examples."  *McKinney*, 20 F.3d at

1557 n.9; *see also 75 Acres*, 338 F.3d at 1296 (analyzing the imposition of a

building moratorium on one piece of property to determine whether it was a

legislative act that did not implicate procedural due process or an adjudicative act

that required procedural due process).  Furthermore, a "'legislative act involves

policy-making rather than mere administrative application of existing policies.'"

*DeKalb Stone*, 106 F.3d at 959 (quoting *Crymes v. DeKalb County*, 923 F.2d

1482, 1485 (11th Cir. 1991) (internal citations omitted)).  Prospective "zoning-

type decisions made by an elected body" are often legislative or quasi-legislative.

*75 Acres*, 338 F.3d at 1296 n.12.

In the Eleventh Circuit, an arbitrary or capricious legislative act may

provide the basis for a substantive due process claim, which is called an

"arbitrary and capricious due process claim."  *Villas of Lake Jackson*, 121 F.3d at

611, 615; *see also Eide*, 908 F.2d at 721-22 (stating that while other courts refer

to a claim based on arbitrary and capricious legislation as a substantive due

process claim, the Eleventh Circuit refers to this claim as an arbitrary and

capricious due process claim).  A balancing test is used to determine whether the

city's decision was arbitrary and capricious or whether it was substantially related

to general welfare interests, including its effect on aesthetics and surrounding

property values.  *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1374-75

(11th Cir. 1993).

    A legislative act may also support other types of claims.  *See Villas of*

*Lake Jackson*, 121 F.3d at 615 (describing four potential claims based on a

zoning regulation that deprives the plaintiff of a constitutionally-protected right to

use the property for a certain purpose).[2]  For instance, a legislative act may form

the basis for an action under the Equal Protection Clause[3] or the Takings Clause

─────────────────────

    [2] The Eleventh Circuit in *Villas of Lake Jackson* also stated that a zoning
regulation could provide the basis for a "procedural due process claim
challenging the procedures by which the regulation was adopted."  121 F.3d at
615.  However, the court has since clarified that statement, holding that for
legislative acts, "property owners are generally not entitled to procedural due
process" because the legislative process itself provides all the required due
process.  *75 Acres*, 338 F.3d at 1294; *but cf. Busse v. Lee County Fla.*, No. 08-
13170, 2009 WL 549782, at *3 (11th Cir. March 5, 2009) (stating that a plaintiff
could state a claim for procedural due process "challenging the procedures by
which a regulation was adopted," but then stating that "alleged problems with the
adoption of such acts cannot serve as the basis for a procedural due process
claim").

    [3] The Equal Protection claim is not addressed in this Order because the
Defendants did not challenge Romero's Equal Protection claim in Count II.

of the Constitution.  *See Villas of Lake Jackson*, 121 F.3d at 612, 615.

To illustrate, a plaintiff may establish a Takings Clause claim if a regulation or state action "goes too far" and destroys the value of the land entirely, even if temporarily, without compensating the property owner.  *See First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.*, 482 U.S. 304, 316-18 (1987).  A Takings claim must be asserted under the Takings Clause of the Fifth Amendment.  *See Villas of Lake Jackson*, 121 F.3d at 611 (noting that the possible "due process takings" claim mentioned in the Eleventh Circuit's *Eide* opinion was no longer cognizable under Supreme Court jurisprudence).  A Takings Clause claim addresses government action that is invalid absent compensation, while an arbitrary and capricious substantive due process claim addresses government action that is invalid the moment it occurs despite any subsequent remedy or compensation.  *See Tampa Hillsborough County Expressway Auth. v. A.G.W.S. Corp.*, 640 So.2d 54, 57 (Fla. 1994).

However, mere fluctuations in the value of real property due to governmental decision-making are generally just "incidents of ownership" and do not amount to a Taking.  *See First English*, 482 U.S. at 320.  In addition, a challenge to a regulatory deprivation of a single use of real property must be considered in light of the remaining use of the property as a whole.  *See Villas of Lake Jackson*, 121 F.3d at 614 (illustrating that destroying one strand in the bundle of property rights does not constitute a Taking; rather, a Taking would chop through all the strands in the bundle).

Furthermore, a Takings claim must be ripe in order for the federal court to have jurisdiction.  *See Eide*, 908 F.2d at 725.  The plaintiff must meet the "ripeness prerequisite of exhaustion of the state-court inverse condemnation remedy."  *Villas of Lake Jackson*, 121 F.3d at 612; *see also Bickerstaff Clay Prods. Co. v. Harris County, Ga. Bd. of Comm'rs*, 89 F.3d 1481, 1490-91 (11th Cir. 1996) ("A Takings clause claim does not become ripe unless the state provides no remedy [such as an action for inverse condemnation] to compensate the landowner for the taking.").  The state of Florida ensures that full and just compensation be paid if a Taking occurs which "substantially" interferes with private property.  *See Joint Ventures, Inc. v. Dep't of Transp.*, 563 So.2d 622, 624, 627 (Fla. 1990) (describing the guarantee of just compensation granted by the Florida constitution and the Florida courts); *see also Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539, 1542 (11th Cir. 1991) (recognizing that property owners may bring reverse condemnation proceedings for regulatory takings in Florida courts).

If a plaintiff's Takings claim is ripe after using state court inverse condemnation remedies, he may bring a facial or as applied challenge to the zoning regulation.  *See Eide*, 908 F.2d at 725.  For an as applied challenge, the plaintiff must pass an additional two-part test.  *See Eide*, 908 F.2d at 716 n.16.  First, the zoning decision must be made finally and applied to the property.  *Eide*, 908 F.2d at 716 n.16.  Second, the city "must have made all other decisions necessary for the court to determine whether the landowner has been deprived

of substantially all economically beneficial value of the property."  *Eide*, 908 F.2d at 716 n.16.

To summarize the previous distinctions, a plaintiff's state-created property interest is only entitled to procedural due process for a potential deprivation by an executive act.  A legislative act, however, can support a substantive due process claim if it is arbitrary and capricious.  Before a court can even consider a Takings Clause claim, the plaintiff must exhaust the state's inverse condemnation remedies.  To determine the available claim, if any, a court must analyze the interest at stake and classify the disputed state action.

III.  ANALYSIS

Against this complicated legal framework, the Court will examine the factual allegations of Romero's complaint to determine if he has stated a claim.

A.  Count I:  Procedural Due Process

A successful § 1983 claim "alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (internal citations omitted).

Romero has met the first two requirements.  First, he alleged a protected property interest in his building permit.  (Compl. ¶¶ 20, 21.)  This interest arises under Florida law through the doctrine of equitable estoppel.  *See Coral Springs St. Sys.*, 371 F.3d at 1334.  Romero has alleged expenditures made in reliance

on the permit.  (Compl. ¶¶ 20, 21.)   Defendants have not challenged this state-created interest.

Second, Romero alleged that state action caused the deprivation through the stop work order issued on his property.  (Compl. ¶¶ 47, 48.)  Unfortunately, Defendants misread this allegation and direct their arguments to the moratorium rather than the stop work order.  In their motion to dismiss, Defendants argue that because the moratorium was a legislative act, Romero is entitled to no additional due process protection beyond the legislative process.  (Def.'s Mot.: 2-4); *see 75 Acres*, 338 F.3d at 1296 (holding that legislative acts do not entitle a plaintiff to procedural due process).  However, Romero never alleges that the moratorium violated his procedural due process, but rather that the stop work order caused the deprivation.  (Compl. ¶¶ 47, 48; Pl.'s Resp.: 2-3.)  For this reason, Romero properly alleges an executive state action caused his deprivation.

The third requirement, however, is not satisfied by the allegations in Romero's complaint and requires dismissal of Count I.  Romero must allege a constitutionally inadequate process, and Romero claims that the "Municipality of Alachua Land Use Regulations provide no procedure upon which plaintiff ROMERO could administratively contest the stop work order."  (Compl. ¶ 51.c) (emphasis added).  He restates this belief in his response.  (Pl.'s Resp.: 10) ("such appeal opportunity appearing nowhere in the City of Alachua LDRs").  Romero believes this lack of procedure also precluded him from review by the

Florida circuit courts because there was no record created for the circuit court to review.  (Compl. ¶ 51.d.)  However, even assuming circuit court review is precluded without a record, such a procedure to contest the stop work order does exist, and the reason there was no record the circuit court could review was because Romero failed to use the available post-deprivation remedies provided by the state.  *See McKinney*, 20 F.3d at 1565 (stating that a plaintiff's failure to use procedures provided by state law does not render the procedures inadequate).

For example, Romero could have appealed the stop work order to the city of Alachua's Zoning Board of Appeals ("BOA").[4]  The Alachua Land Development Regulations ("LDRs") are available online and detail the appeal procedure.[5]  Section 2.4.18, entitled "Mobile Home Move-On Permit," applies to the "placement, erection, and use of a mobile home in the City" and enables "any person aggrieved or affected by a decision of the LDR Administrator [to] appeal such decision to the BOA in accordance with section 2.4.20, *Appeal of Interpretations or Decisions by LDR Administrator.*"[6]  Land Dev. Reg. § 2.4.18

---

[4]  As Romero points out in his response, Defendants cite the incorrect Land Development Regulation ("LDR") for the appeal procedure.  (Def.'s Mot.: 5; Pl.'s Resp.: 8.)  The Court has taken judicial notice of the 549 pages of LDRs, and this Order cites the correct LDR for the appeal.

[5] City of Alachua, Fla., Land Dev. Reg., *available at* http://www.cityofalachua.com/index.asp?Type=B_BASIC&SEC={EEF21F5E-EFB 5-4367-850C-1AF6A0A0D38D}.

[6] The "LDR Administrator" is previously defined in Section 2.1.6(A)(1) as the City Manager or his designee.

(B); (H) (emphasis in original).  Section 2.4.20 details the "Appeal Procedure,"

which includes appellant's ability to appear, with or without counsel, and present

evidence to support his appeal.  Land Dev. Reg. § 2.4.20 (B)(1)-(5).  Contrary to

Romero's assertion, the city's LDRs do include an appeal procedure.

Furthermore, if Romero had used the city's appeals process and then

received an unfavorable decision from the BOA, he would have had a record for

the state court to review.  The Florida circuit court could have used its broad

powers of review to determine whether Romero received due process.  *See*

*McKinney*, 20 F.3d at 1563-64.  However, Romero's complaint mistakenly fails to

recognize the availability of any appeal procedure provided by the city and the

opportunity for state court review of that procedure.

The state of Florida does provide post-deprivation remedies.  Romero fails

to recognize the availability of these remedies at all.  For this reason, Count I

must be dismissed because it does not state a claim for a violation of Romero's

procedural due process.

B.  Count III:  Substantive Due Process

Defendants argue that Count III, entitled "Substantive Due Process,"  must

be dismissed because it is based on a state-created property right which is not

entitled substantive due process protection.  The Court agrees.  The building

permit is entitled only to procedural due process protections.  *See McKinney*, 20

F.3d at 1556; *Coral Springs St. Sys.*, 371 F.3d at 1334.  For this reason,

Romero's claim for a substantive due process violation based on the building

permit, and subsequent stop work order which suspended his permit privileges, must be dismissed.

In addition, the Court holds that the stop work order was an executive act because it applied to only Romero, it was an act of zoning enforcement (even if issued improperly), and it was not prospective or generally applicable to the city's citizens. *See McKinney*, 20 F.3d at 1557 n.9; *DeKalb Stone*, 106 F.3d. at 959. This characterization of the stop work order as an executive act applies despite the identity of the responsible party. *See Reserve*, 933 F. Supp. at 1043-44 (holding that the decision to revoke a building permit was executive, even if made by the legislative branch, because it applied only to one person). Because the stop work order was an executive act, Romero is only entitled to procedural due process protections for its potentially wrongful suspension of his building privileges.

The only claim Romero could state for a violation of his substantive due process would involve an arbitrary and capricious legislative act. *See Villas of Lake Jackson*, 121 F.3d at 615. While the moratorium could provide the basis for this claim if it were a legislative act, Romero consistently states that he does not contest the moratorium and that the moratorium never applied to him. (Compl. ¶ 37) (stating the moratorium applied only to "the approval or issuance of any *new or subsequent* mobile home permits and is not applicable to plaintiff's previously issued [building] permit"). He explains:

> [D]efendants unlawfully prevented the plaintiff from building activity as a result of an unlawful stop work order and not as a result of a lawfully

> enacted moratorium . . . . [The moratorium] regulated future
> applications and building activity but did not address the Plaintiff
> directly.  It was the CITY MANAGER's stop work order, issued prior
> to the enactment of the emergency ordinance, that prevented the
> Plaintiff from completing his building project.

(Pl.'s Resp.: 2, 18.)  Therefore, the Court need not classify the moratorium as

legislative or executive or determine whether it violated Romero's substantive

due process.  Romero asserts definitively that he does not contest the

moratorium.

For these reasons, Romero's substantive due process claim in Count III

must be dismissed.  Romero does not state a claim based on an arbitrary and

capricious legislative act.

C.  Count IV:  Substantive Due Process - Fundamental Liberty Interest

Count IV, entitled "Substantive Due Process - Fundamental Liberty

Interest," mirrors Count III almost identically.[7]  Romero apparently asserts a

fundamental right to build on his property in this count.  (Pl.'s Resp.:11-12.)

However, there is no fundamental liberty interest in a specific use of one's

property, such as the erection of a mobile home.  *See DeKalb Stone*, 106 F.3d at

959-60 (stating that property rights, while important, are not fundamental);

*Collins*, 38 F. Supp. 2d at 1342-43 (holding that the right to "own, alienate, or

otherwise use real property" does not fall within the set of fundamental rights

---

[7] The only difference between the two counts is the omission of five
paragraphs found in Count III (although reincorporated by reference in Count IV)
and the substitution of paragraph 91 from Count III for paragraph 109 in Count
IV.  (Compl. ¶¶ 71-112.)

protected by substantive due process).  For that reason, and because any other discernable claim in Count IV was previously stated in Count III, Count IV must be dismissed with prejudice.

>    D.  Count V:  Temporary Taking of Property without Just Compensation

As Romero recognizes, a Takings claim is only ripe for adjudication if the plaintiff overcomes the just compensation hurdle, including exhaustion of the state court inverse condemnation remedy.  (Pl.'s Resp.: 14.); *see Villas of Lake Jackson*, 121 F.3d at 612.  If the claim is ripe, then the court must also determine whether a final decision was reached and applied to the property.  *See Eide*, 908 F.2d at 716 n.16. The state of Florida provides an inverse condemnation remedy. *See Executive 100*, 922 F.2d at 1539.  Romero, however, fails to recognize the existence of this remedy and never overcame the required hurdle by using the state's remedy.  (Pl.'s Resp.: 15.)

In his response, Romero asserts a futility defense to justify this failure to exhaust the state court inverse condemnation remedy.  (Pl.'s Resp.: 16-17.) However, the available futility defense applies to the final decision hurdle, not to the just compensation hurdle.  *See Eide*, 908 F.2d at 726-727.  There is no futility exception to the just compensation hurdle.  *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985) ("if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just

compensation.").  Instead, a plaintiff may assert only the inadequacy of the state

compensation procedures.  *See id.*  Even assuming that Romero meets the final

decision hurdle, he has not used "all state procedures for just compensation."

*See Eide*, 908 F.2d at 723; *see also Williamson County*, 473 U.S. at 194-95.

Romero has also not alleged the inadequacy of Florida's just compensation

procedure.  Therefore, Romero's claim is not ripe and Count V must be

dismissed.

IV.  CONCLUSION

        To summarize, a property owner does possess a right to use and develop

his property, but that right is subject to reasonable regulation by the state.  *See*

*DeKalb Stone*, 106 F.3d at 959 n.6.  If the state's action is improper, then the

plaintiff may state a claim based upon the type of act that caused the deprivation

of the property right.  If the state uses an arbitrary or capricious legislative act to

unreasonably regulate, then a substantive due process claim will lie.  *See*

*McKinney*, 20 F.3d at 1557 n.9.  If the state uses an improper executive act to

deprive the plaintiff of his interest, then a procedural due process claim will lie.

*See DeKalb Stone*, 106 F.3d at 959-60.  If the state goes so far that its regulation

cuts through all the strands in the property owner's bundle of rights, depriving

him of all economically viable uses of his land, then a Takings Clause claim will

lie.  *See Villas of Lake Jackson*, 121 F.3d at 614.

        However, Romero's facts as stated in the complaint do not support a

legally cognizable cause of action, even after construing the facts in the light

most favorable to the plaintiff and examining the cause of action for what it actually is, not for what Romero names it.  *See Kirby*, 195 F.3d at 1289*; McKinney*, 20 F.3d at 1560*.*  Therefore, Defendants' motion to dismiss four counts of the complaint will be granted.  Based on the foregoing, it is hereby ORDERED AND ADJUDGED as follows:

1.  Defendants' motion to dismiss (doc. 6) is ***granted*** as to Counts I, III, and V.

2.  Plaintiff shall have up to and including June 1, 2009, to file an amended complaint to state valid claims for relief on Counts I, III, and V.  If Plaintiff chooses not to amend by this date, the claims will be dismissed with prejudice.

3.  Defendants' motion to dismiss (doc. 6) is ***granted with prejudice*** as to Count IV.

DONE AND ORDERED this <u>thirteenth</u> day of May, 2009.


   *s/ Stephan P. Mickle*
   Stephan P. Mickle
   United States District Judge